# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 10-CV-00554-LTB-BNB

    CHRISTINA DIAZ,

        Plaintiff,

vs.

    LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

        Defendant.

---

## SCHEDULING ORDER IN ACTION FOR
## REVIEW ON AN ADMINISTRATIVE RECORD

---

### 1. DATE OF CONFERENCE
### AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

The conference was held August 3, 2010.

Appearing for Plaintiff, Christina Diaz, was Thomas A. Bulger, SILVER & BULGER, P.C., 4800 Wadsworth Blvd., #307, Wheat Ridge, Colorado 80033, (303) 292-0044.

Appearing for Defendant, Liberty Life Assurance Company of Boston, was Clinton P. Swift, Esq., Swift and Bramer, LLP, 1230 West Ash Street, Suite C, Windsor, CO 80550, (970) 460-0266.

### 2. STATEMENT OF JURISDICTION

Jurisdiction is proper under 28 U.S.C. § 1331, as this matter arises under the Employee Retirement Income Security Act of 1974 ("ERISA"). Jurisdiction may also appropriate under 28 U.S.C. § 1332, as this controversy involves citizens of different states and the amount alleged in controversy exceeds the jurisdictional requirements of this Court.

# 3. STATEMENT OF CLAIMS AND DEFENSES

*Plaintiff:* The Plaintiff is Christina Diaz. At all pertinent times Plaintiff worked (and continues to work) for World Savings Golden West Financial ("Golden West"), as a customer service specialist. Golden West provides its employees with certain benefits, including LTD benefits, pursuant to a group benefit plan as defined by ERISA.

The Defendant insures the Plan, and has been delegated decision-making authority.

On or about June 13, 2007, Plaintiff underwent brain surgery. However, and during the surgery, the drug manitol leaked into her leg, causing her to develop leg compartment syndrome, and causing extensive muscular and neuromuscular damage. Plaintiff underwent significant medical care as a result, and to treat this condition.

Plaintiff timely applied for and was awarded LTD benefits from the Defendant, as she was unable to work. Eventually, Plaintiff was able to return to part-time work (and Defendant continued to pay partial benefits until August 1, 2009). On or about August 1, 2009, Defendant advised that it was terminating benefits. Plaintiff timely appealed, and has exhausted the administrative review requirements of the Plan.

Plaintiff claims that she is and remains partially disabled and therefore entitled to continued LTD benefits. She seeks reversal of Defendant's termination of benefits, and reinstatement of her benefits, together with interest; costs and attorney fees according to law.

*Defendant:* Plaintiff, Christina Diaz, was born on June 18, 1979 and is 31 years old. She was hired on May 19, 2003 by World Savings Golden West Financial as a Customer Service Specialist Sr. Plaintiff's last day of work was June 9 or 10, 2007. Plaintiff claims that she became unable to perform her own or any occupation on a full-time and unrestricted basis as of June,

2007.

Plaintiff filed her Disability Claim Form dated September 17, 2007 with Defendant Liberty Life Assurance Company of Boston ("Defendant" or "Liberty"). Plaintiff's claim form indicated that she underwent a successful craniotomy on June 13, 2007 but suffered a leg wound to her right leg in connection with an IV placed in her leg during the surgery. Plaintiff underwent surgery to close the leg wound on June 20, 2007. She subsequently underwent a series of debridements of her wound due to infection and necrosis of the skin areas. She was discharged from the hospital July 27, 2007. An Attending Physician Statement completed by Dr. David Schnur, her primary care physician, diagnosed her condition as an open wound, with an excellent prognosis. Dr. Schnur's medical record dated July 1, 2008 indicated that the wound was completely healed and his note of July 29, 2008 indicated that Plaintiff had fairly good range of motion in her ankle and that Plaintiff could go back to normal activity after one month if she remained healed. Plaintiff then began treatment with Dr. Keith Naftulin for orthotic management and with Dr. Brookoff for pain management.

Liberty issued its Group Disability Income Policy to Golden West Financial Policy Number GF3-860-039005-01 effective January 1, 2000 ("Policy"). The Policy provides coverage for All Full-Time Non-Loan Agent Employees who are in Active Employment. The Policy provides a 24 Month Own Occupation Benefit, with a 90 day elimination period. During the Own Occupation period "Disability" or "Disabled" is defined as during the Elimination Period and the next 24 months of Disability the Covered Person is unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness. During the Any Occupation period "Disability" or "Disabled" is defined as after 24 months of benefits have been paid, the Covered Person is unable to perform, with reasonable continuity, all of the material and

substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

Liberty approved Plaintiff's claim for benefits by letter dated December 11, 2007. The letter noted that Plaintiff's claim would be evaluated periodically to determine ongoing disability and that approval does not guarantee payments through the maximum benefit period. Liberty determined that Plaintiff's date of disability was June 11, 2007 and paid Own Occupation benefits after the elimination period, beginning September 9, 2007.

In order to evaluate whether or not Plaintiff continued to meet the Policy's definition of Disabled during the "Own Occupation" period, Liberty requested and received medical records from Plaintiff's physicians, Dr. David Schnur, Dr. Maria Hopp, Dr. Keith Naftulin, and Dr. Daniel Brookoff. Liberty referred Plaintiff's file, including Plaintiff's medical records, to Dr. Judith Esman, Board Certified in Physical Medicine and Rehabilitation and Board Certified in Pain Medicine and Internal Medicine, for an Independent Peer Review. Dr. Esman made several attempts to consult with Drs. Schnur, Hopp, Naftulin, and Brookoff during the conduct of her review. Dr. Esman spoke to Dr. Naftulin on March 18, 2009. Dr. Naftulin indicated that he last saw Plaintiff on October 1, 2008. Dr. Naftulin advised that he had placed Plaintiff on work restrictions of 20 hours per week, to be re-evaluated in 90 days. He also advised that he normally would have expected to loosen Plaintiff's work restrictions and advance her hours as tolerated but that he did not have an update on her condition. Dr. Naftulin noted that Plaintiff had been discharged from physical therapy on January 16, 2009. Dr. Esman wrote to Dr. Naftulin on March 21, 2009 to confirm her conversation with Dr. Naftulin.

Dr. Esman's Independent Peer Review is dated March 21, 2009. Dr. Esman's report indicates that reasonable restrictions and limitations for Plaintiff are ambulating short distances, no more than

100 feet, three times per hour, standing no more than 10 minutes out of an hour, restricted to standing and walking a maximum of 80 minutes in an 8-hour day, for 40 minutes in a 4-hour day, and that Plaintiff needed to be able to elevate her right leg up to 4 hours per day total when not sleeping. Sitting and reaching were unrestricted. Dr. Esman noted that as of November 2008 Plaintiff was working 20 hours per week and that it was expected that she would continue to improve and that within six months she should be working full time.

Liberty's disability claims analyst Jennifer McHugh wrote to Dr. Naftulin, Dr. Brookoff, and Dr. Schnur, providing each one of them with a copy of Dr. Esman's Independent Peer Review report, requesting that they review and comment on the report. The letter indicated that if they did not reply prior to the deadline Liberty would presume that they concurred with Dr. Esman. Dr. Naftulin wrote to Ms. McHugh by letter dated April 7, 2009, indicating that he reviewed Dr. Esman's report and that the report accurately confirmed his restrictions and limitations, including unlimited sitting and reaching. Dr. Naftulin indicated that it was his opinion that because of Plaintiff's problems with chronic edema, skin integrity, and other musculotendinous deficiencies that Plaintiff may have difficulty returning to a normal 40 hour work week. Drs. Schnur and Brookoff did not reply.

Liberty also obtained a Transferrable Skills Analysis and Labor Market Information Report prepared by Cascade Disability Management, Inc. which is dated April 29, 2009. The report was based on the restrictions and limitations contained in Dr. Esman's Independent Peer Review. Dan Tayler Careau, Cascade's Vocational Case Manager, identified New Account Clerk, Customer Service Representative/Call Center Representative, Member Services Representative, and Statement Clerk/Billing Clerk as jobs Plaintiff could perform given her education, training and experience and

restrictions. Mr. Careau concluded that these jobs were readily available in the national economy on a part time basis.

In order to clarify the discrepancy between Dr. Esman's report and Dr. Naftulin's response, Liberty required Plaintiff to undergo an Independent Medical examination by Dr. Gretchen Brunworth. Dr. Brunworth is board certified in physical medicine and rehabilitation. Dr. Brunworth's IME dated May 28, 2009 determined that Plaintiff was limited to maximum lifting, pushing, and pulling of 25 pounds and standing and walking was limited to 55 minutes in an hour with a five minute break to sit, for a total of six hours sitting in an eight hour day.

Liberty also had a second transferrable skills analysis performed by Vocational Case Manager Elizabeth M. Crunkilton. The analysis was based on the IME performed by Dr. Brunworth. The report is dated July 28, 2009. The report identified Billing/Posting/Statement Clerk. Customer Service Representative, New Accounts Clerk and Teller as jobs that Plaintiff could perform based on her education, training and experience and restrictions and limitations.

Liberty, by letter dated July 31, 2009 determined that benefits were no longer payable as Plaintiff could perform her Own Occupation of teller and thus she did not meet the Policy definition of Disabled. Liberty determined that benefits would be payable through July 31, 2009 and that Plaintiff's claim would close August 1, 2009.

Plaintiff appealed the closing of her claim by letter from Attorney Thomas Bulger dated September 30, 2009. Mr. Bulger's letter indicates: "it does not appear that the physical requirements of Ms. Diaz' job were adequately considered, including her need to stand on a full-time basis as a bank teller.

Plaintiff's appeal was conducted by Nancy Winterer, Appeal Review Consultant. Plaintiff submitted a "WORK/SCHOOL RELEASE" completed by Dr. Naftulin dated September 22, 2008

releasing Plaintiff to work 20 hours per week maximum pending a re-evaluation in 90 days, which work would allow Plaintiff to sit when needed. By letter dated October 5, 2009 Mr. Bulger submitted the transcript of Dr. Naftulin in Plaintiff's medical malpractice case against Dr. Andrew Veit, which deposition is dated September 21, 2009. Dr. Naftulin was asked about Dr. Gretchen Brunworth's IME report:

> Q. Okay. And then I was just looking at Dr. Gretchen Brunworth. It's kind of interesting. She says the patient can—meaning Ms. Diaz—"has a maximum lift, push, or pull of 25 pounds. Standing or walking for no more than 55 minutes in an hour without a five-minute break to sit" So she actually gives Ms. Diaz less of a restriction in that regard than you do, correct?
>
> A. I agree.
>
> Q. And then she says "Standing and walking for no more than six hours in an eight-hour day. As long as the patient is allowed to get off her feet and is not required to be on her feet for more than six hours a day, I think she can work full-time." So she disagrees with you in that regard?
>
> A. We agreed that if she was able to sit then she could work a full eight-hour day.
>
> Q. Okay. Go it. So it's really all about—
>
> A. Standing.
>
> Q. –standing and whether or not she's in a job that will compensate her. But if she could sit at a job, she could work eight hours a day?
>
> A. Yes.

Liberty engaged BMI to conduct a second independent peer review of Plaintiff's medical records. The peer review was conducted by Dr. Milton Klein, DO, board certified in Physical

Medicine and Rehabilitation. Dr. Klein's report is dated December 10, 2009. Dr. Klein opined that from the period July 31, 2009 through the present, Plaintiff is restricted to a sedentary level of physical and work activities. Dr. Klein opined that Plaintiff is limited to standing and walking activities for no more than six hours of an eight-hour workday. While sitting Plaintiff should elevate her right lower extremity in order to decrease venous stasis and associated swelling. Dr. Klein opined that the available medical documentation indicated that self-reported sedation from the prescribed analgesic medication is not supported by clinical evidence, specifically the treating physician's documentation. Dr. Klein discussed his report with Dr. Naftulin on December 1, 2009. Dr. Klein was unable to speak to Dr. Brookoff. Dr. Klein concluded that based on his review of Plaintiff's medical records and discussion with Dr. Naftulin Plaintiff is capable of full-time sustained work, restricted to light duty.

Liberty had an updated Transferable Skills Analysis/Vocational Review performed by Jason E. Miller, which analysis is dated December 18, 2009. The updated analysis identified Billing/Posting/Statement Clerk, Customer Service Representative, New Account Clerk, Information Clerk and Receptionist, as jobs that Plaintiff could perform based on her education, training, and experience and restrictions and limitations. The occupation of Teller was eliminated due to Plaintiff's inability to lift greater than 10 pounds.

Liberty, by letter dated January 5, 2010 written by Nancy Winterer, advised Plaintiff that it had considered her request for reconsideration of her claim for Long Term Disability benefits and determined that Ms. Diaz met the Policy's definition of Disability for the Own Occupation period of twenty-four months. Liberty paid long term disability benefits to Plaintiff for the remainder of the Own Occupation period. Liberty determined that Plaintiff does not meet the Policy's definition of Disabled for the Any Occupation Period based on its review of the medical documentation

contained in Plaintiff's claim file. Benefits were discontinued as of September 9, 2009.

Liberty's position is that its closure of Plaintiff's claim and discontinuation of benefits under the Policy was reasonable, supported by substantial evidence in the claim file which is the administrative record in this case, and that Plaintiff is not disabled within the meaning of Liberty's Policy.

### 4. COMPUTATION OF DAMAGES

*Plaintiff:* Plaintiff's monthly LTD benefit (based on a part-time work schedule is estimated at $1,281.42. The back due benefits total $12,814.20 (from August 1, 2009 to the present). Plaintiff also seeks reinstatement under the Plan, and benefits into the future. The gross value of those benefits are estimated at $278,964.90, based on the following. Plaintiff's monthly benefit as noted above is $1,281.42. Ms. Diaz is 31 years old and eligible for benefits until age 65 (an additional 396 months). Reducing these benefits, with said offset to present value and using a 4% discount rate, this totals approximately $291,778.90.

Plaintiff also seeks interest on all past due amounts according to law.

Plaintiff seeks attorney fees and costs, estimated at $5,000.00 to date, under ERISA. Fees and costs are estimate at $50,000.00 through trial final resolution.

Defendant: Defendant Liberty seeks its reasonable attorney's fees and costs pursuant to ERISA.

### 5. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

### 6. CASE PLAN AND SCHEDULE

**Plaintiff and Defendant agree upon the administrative record, which ~~was~~ has been Bates stamped 1 to 1153, a copy of which has been provided to Plaintiff**

**by Defendant. The parties agree that the applicable standard of review is arbitrary and capricious**

a. Deadline for submission of the Administrative Record or Index pursuant to Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973): September 17, 2010.

b. **Deadline for Filing any Motion Requesting Discovery: September 2, 2010.**

[A party moving for discovery must set forth in their motion the factual and legal bases for the requested discovery, and must append to their motion proposed interrogatories and/or requests for production. A party requesting depositions should also provide a list of proposed deponents and a brief summary of the information to be sough from each deponent.]

c. Deadline for Filing a Motion to Supplement the Administrative Record: September 30, 2010

[A party moving to supplement the administrative record must set forth in their motion the factual and legal bases for the requested relief and must identify the documents, materials or facts they wish to incorporate in the administrative record.]

d. ~~Deadline for filing Motion to file case ready for determination is October 1, 2010~~.

e. **Deadline for filing Plaintiff's Opening Brief: November 30, 2010.**

f. **Deadline for filing Defendant's Response Brief: January 7, 2011.**

g. **Deadline for filing Plaintiff's Reply Brief: January 31, 2011.**

h. **Deadline for filing Joint Motion for Determination: January 31, 2011**

[The parties must file, contemporaneously with the filing of Plaintiff's Reply Brief, a "Joint Motion for Determination" which will serve as notice to the court that briefing has been completed.]

### 7. CONFERENCES

The parties hereby certify here that, as required by Fed. R. Civ. P. 26(f), they have discussed the possibilities for a prompt settlement or resolution of the case by alternative dispute resolution, and agree that a prompt settlement conference conducted by the court would be of assistance. The parties therefore request that the Court set a settlement conference at its earliest convenience.

a. A settlement conference will be held on September 2, 2010 at 1:30 p.m.

It is hereby ordered that all settlement conferences that take place before the magistrate judge shall be confidential.

( ) *Pro se* parties and attorneys only need by present.

( x ) *Pro se* parties, attorneys, and client representatives with authority to settle must be present. (NOTE: This requirement is not fulfilled by the presence of counsel. If an insurance company is involved, an adjustor authorized to enter into settlement must also be present.)

( x ) Each party shall submit a Confidential Settlement Statement to the magistrate judge on or before August 26, 2010 outlining the facts and issues, as well as the strengths and weaknesses of their case. The Confidential Settlement Statement must contain a dollar amount that the party will accept/pay in complete settlement of the case together with any terms that the party requires.

b. Status conferences will be held in this case at the following dates and times:

# 8. OTHER MATTERS

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures established by the judicial officer presiding over the trial of this case.

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of the notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record and all *pro se* parties.

Dated August 10, 2010.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge

APPROVED:

/s/ Thomas A. Bulger
Thomas A. Bulger
SILVER & BULGER, P.C.
4800 Wadsworth Blvd., #307
Wheat Ridge, Colorado 80033
(303) 292-0044 (ofc)
(303) 292-1466 (fax)
COUNSEL FOR PLAINTIFF


/s/ Clinton P. Swift
Clinton P. Swift, Esq.
Swift and Bramer, LLP
1230 West Ash St., Suite C
Windsor, CO 80550
COUNSEL FOR DEFENDANT